UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Langsden Ward, | **1:17-CV-0704** |
| *Petitioner*, | |
| – against – | **Not for Publication** |
| Michael Capra, | |
| *Respondent*. | **Opinion & Order** |

ROSS, United States District Judge:

The petitioner in this action is seeking a writ of habeas corpus, arguing that his state-court conviction was tainted by (1) the trial judge's refusal to allow petitioner to obtain substitute counsel, (2) an improper jury instruction regarding the reasonable-doubt standard, and (3) the erroneous admission of prior-bad-acts evidence. Under the limited review allowed by 28 U.S.C. § 2254, I find that none of petitioner's objections rise to the level of a violation of his constitutional rights, and therefore I deny his petition.

## BACKGROUND

*Proceedings Before the State Trial Court*

Petitioner, Langsden Ward, was convicted at trial in New York Supreme Court of two counts of predatory sexual assault, one count of second-degree rape, three counts of third-degree rape, three counts of third-degree criminal sexual act, one count of third-degree criminal possession of a weapon, and two counts of endangering the welfare of a child. Trial Tr. 696:22–698:25, ECF No. 9-7. He now petitions this court for a writ of habeas corpus, arguing that his constitutional rights were violated at trial. *See* Pet. 16, ECF No. 1. Rather than

recount the entire factual background of Ward's case, I recite below only the facts salient to his petition.

On March 26, 2012, on the eve of trial, the trial court held a *Sandoval* hearing.[1] At the outset of the hearing, Ward's trial counsel, Judah Maltz, stated: "Judge, I think my client has a little problem with me now. He just told me he doesn't want to talk to me. Disagreeable and doesn't want to communicate with me now. So I'm going to ask the Court to address the issue." *Sandoval* Hr'g Tr. 4:12–16, ECF No. 9-3. Ward then told the judge: "I don't want him anymore. First and foremost not helping me at all. I don't see myself even surviving this jungle right here with him even representing me." *Id.* at 4:19–22. The judge informed Ward that he "ha[d] the right to hire any attorney that he wishes to hire to represent him," to which Ward interjected, "[n]ot going to happen." *Id.* at 5:3–5. The trial judge continued: "But [you've] been represented by several different attorneys already.[2] I am not going to relieve Mr. Maltz from representation and assign you a new attorney." *Id.* at 5:6–8.

Ward and the trial judge then engaged in a lengthy colloquy regarding Ward's representation:

> THE DEFENDANT: I am putting it on the record, I don't want him as a lawyer.
>
> THE COURT: You can also proceed . . . by yourself, if you wish, as well. You can proceed pro se and represent yourself.
>
> THE DEFENDANT: I don't want to proceed with him. And I'm going to tell you, I'm not a lawyer or nothing like that. But I think I can do better than him.

---

[1] *See generally People v. Sandoval*, 314 N.E.2d 413, 416–17 (N.Y. 1974) (recommending that trial judges hold pretrial hearings regarding admissibility of "prior convictions or proof of the prior commission of specific criminal, vicious or immoral acts" so that "the defendant[,] with definitive advance knowledge of the scope of cross-examination as to prior conduct to which he will be subjected, can decide whether to take the witness stand").

[2] The trial judge may have been mistaken on this point. *See* Resp't Br. 52, ECF No. 9-1. Ward *had* been assigned new counsel at least once previously in the matter, however. *See* Appellant Br. 47–48, ECF No. 9-1.

THE COURT: The alternatives that you have, Mr. Ward, are either to represent yourself in this matter, to hire your own counsel to represent you; or if you wish to represent yourself, I will have Mr. Maltz remain as legal adviser to represent you during the course of the trial.

THE DEFENDANT: First and foremost, like I said, I'm not a lawyer. You know what I'm saying?

THE COURT: And that's why I am going to advise you, you should not represent yourself in this matter, because the stakes in this case are extremely high.

Mr. Maltz is an extremely able attorney. . . . So I would recommend that you stay with Mr. Maltz.

I'm not going to assign you a new lawyer given that you have been through several lawyers in this matter already.[3]

So I will not prevent you from representing yourself if you wish to do that, but I suggest that you allow Mr. Maltz to conduct your representation in this matter.

THE DEFENDANT: So you're forcing me to have him.

THE COURT: I'm not forcing you to have him. I am indicating to you that you can hire a lawyer or that you can represent yourself . . . .

But I am not going to assign you a new Court-appointed attorney. . . .

So you can either proceed with Mr. Maltz, or . . . you can represent yourself in this matter. Now, how do you wish to proceed?

THE DEFENDANT: You're forcing me, like I said, to put on the record, you're forcing me to have him. And I don't want him.

THE COURT: Then you wish to represent yourself; is that correct?

THE DEFENDANT: I don't wish to represent myself.

THE COURT: Then I will allow Mr. Maltz to continue to represent you in this matter.

THE DEFENDANT: Like I said, I'll put on the record, no disrespect to you, but the last Judge said the same thing about the last lawyer, and the last lawyer called me an asshole. And no disrespect, all kind of false stuff like these attorneys and whatever, and came out here and said I was the aggressor, and the last Judge said the same thing you said, just with him.

This is where I am at now facing a hundred years to life for—

---

[3] *See supra* note 2.

THE COURT: For the record, you don't wish to represent yourself in this matter?

. . . .

THE DEFENDANT: No, I don't wish to have him either.

THE COURT: That's fine.

*Id.* at 5:9–7:25. The trial judge then proceeded with the hearing. *See id.* at 7:25–8:9.

Later in the hearing, the trial judge inquired whether, in connection with the criminal-possession-of-a-weapon charge, Ward would admit to a prior felony conviction, thus obviating the state's need—and ability—to introduce evidence of that prior conviction at trial. *Id.* at 13:17–15:8. After discussing the issue with Ward, the trial judge said, "I'll give you a moment to discuss it with Mr. Maltz, and then I will ask you if you admit or deny the conviction." *Id.* at 16:18–20. Ward responded: "No disrespect; I am not talking to him. I'm not getting involved with him." *Id.* at 16:21–22. Ward then admitted his prior felony conviction. *Id.* at 16:25–17:8.

At trial, the underage victims of Ward's misconduct, P.S. and R.P., were two of the principal witnesses. The allegations against Ward included that he had had sex with both P.S. and R.P. when the two were fourteen and fifteen years old, respectively, and that he had done so as part of their initiation into his "gang." *See, e.g.*, Trial Tr. 278:5–279:25, ECF No. 9-5.

On direct examination, P.S. testified that one day Ward "tried to hit [R.P.] on her neck" and threatened "to shoot" R.P. *Id.* at 324:8–21. Trial counsel objected to this testimony, but the trial judge overruled the objection, stating, "This is according to what she heard." *Id.* at 324:13–15. P.S. also testified that Ward once "said that he tried to kill somebody" in Florida, and she testified that that led her to believe that she would be harmed if she did not join Ward's "gang." *Id.* at 328:5–23. Trial counsel again made an objection, which was again overruled. *Id.* at 328:13–14. Finally, on redirect, when the prosecutor asked P.S. why she had had sex with Ward, trial counsel made an objection that was overruled, and P.S. answered,

"Because the things that he said and the way that I had seen him treat [R.P.] before." *Id.* at 376:24–377:4.

At the end of the trial, the judge instructed the jury on the law. Relevant here is the instruction that the judge delivered as to reasonable doubt:

> Before a person may be convicted of a crime by the verdict of a jury the evidence must establish to your satisfaction beyond a reasonable doubt each and every element of the crime and that the defendant on trial is the person who committed it.

> The standard of proof required by law in every criminal case is proof of guilt beyond a reasonable doubt. That standard does not require that the People prove a defendant[']s guilt of charges beyond all possibility of doubt. It requires that the People establish the defendant[']s guilt of the charges beyond a reasonable doubt.

> . . . A doubt of a defendant[']s guilt to be a reasonable doubt must be a doubt for which some reason can be given. The doubt to be reasonable must therefore arise because of the nature and the quality of the evidence in the case or the lack of evidence in the case.

> The doubt to be a reasonable doubt should be one which a reasonable person acting in a matter of this importance would entertain because of the evidence or lack of evidence in the case. A doubt of guilt is not a reasonable doubt if instead of being based on the nature or the quality or lack of evidence in the case it's based on some guess or whim or speculation unrelated to the evidence in the case. Also a doubt of guilt is not a reasonable doubt if it's based on bias, prejudice or sympathy for a defendant or a desire by a juror to avoid a disagreeable duty.

> A reasonable doubt as meant by law is an actual doubt. One which you are aware of having in your mind after having considered all the evidence in the case. If after doing so you then feel uncertain and not fully convinced of a defendant[']s guilt and you are also satisfied that in entertaining such a doubt that you are acting as a reasonable person should act in a matter of this importance[,] that is a reasonable doubt of which the defendant is entitled to the benefit. Whenever any such reasonable doubt exists as to any material element necessary for a conviction you must by law find a defendant not guilty.

> On the other hand if no such reasonable doubt exists[,] if you are convinced of Mr. Ward[']s guilt of charges beyond a reasonable doubt[,] you must by law find him guilty.

Trial Tr. 643:21–645:12, ECF No. 9-6. Trial counsel stated that he did not object to the jury instruction. *See* Trial Tr. 669:1–3, ECF No. 9-7.

The jury returned a verdict of guilty on all counts. *Id.* at 696:22–698:7.

*State Appellate Proceedings*

Ward appealed his conviction to the Appellate Division of the New York Supreme Court, arguing, *inter alia*, that "[b]ecause the court summarily denied [his] requests [for substitute counsel] without the requisite minimal inquiry, he was deprived of his constitutional right to counsel" (Appellant Br. 44, ECF No. 9-1), that "the court impermissibly lightened the People's burden of proof by failing to instruct jurors that it is not sufficient to prove that [he was] 'probably guilty'" (*id.* at 51), and that he "was denied his due process right to a fair trial" due to the "testimony from [P.S.] that [he] purportedly attempted to kill an unknown person and exhibited violent behavior toward the other complainant" (*id.* at 35).

The appellate court rejected the appeal. *People v. Ward*, 994 N.Y.S.2d 675 (App. Div. 2014). As to the first argument, the court observed that "[w]hether counsel is substituted is within the 'discretion and responsibility' of the trial judge, and a court's duty to consider such a motion is invoked only where a defendant makes a 'seemingly serious request[ ].'" *Id.* at 677 (second alteration in original) (quoting *People v. Porto*, 942 N.E.2d 283, 287 (N.Y. 2010)). And the court ruled that Ward's "bare assertions did not suggest the serious possibility of a genuine conflict of interest or other impediment to the defendant's representation by assigned counsel, and did not create a duty of inquiry on the part of the trial court" and as such "the trial court providently exercised its discretion in denying the defendant's request." *Id.* As to Ward's other two arguments, the court ruled that he "failed to preserve [them] for appellate review," and thus the court "decline[d] to review" them. *Id.*

Ward's application to the New York Court of Appeals for leave to appeal the decision of the Appellate Division was denied on February 18, 2016. *People v. Ward*, 51 N.E.3d 576 (N.Y. 2016).

*Current Proceeding*

On February 3, 2017, petitioner *pro se* filed a petition for a writ of habeas corpus in this court. *See* Pet. The state submitted a brief in opposition to the petition on June 23, 2017 (State Br., ECF No. 9), and petitioner submitted a brief in support on September 29, 2017 (Pet'r Br., ECF No. 15). This case was subsequently transferred to me.

## STANDARD OF REVIEW

This case arises under 28 U.S.C. § 2254. Under that statute, I may not grant a habeas petition as to "any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim" either: "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented." § 2254(d).

> Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Finally, "a state court's determination of a factual issue is presumed to be correct, and is unreasonable only where the petitioner meets the burden of 'rebutting the presumption of correctness by clear and convincing evidence.'" *Lynn v. Bliden*, 443 F.3d 238, 246 (2d Cir. 2006) (quoting § 2254(e)(1)).

I also may not grant the petition as to "a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Walker v. Martin*, 562 U.S. 307, 315 (2011) (alteration in original) (quoting *Beard v. Kindler*, 558 U.S. 53, 55 (2009)). That latter prohibition applies regardless of whether "[t]he state-law ground [is] a substantive rule . . . or a procedural barrier to adjudication of the claim on the merits." *Id.* If a petitioner fails to comply with state procedural rules in presenting his constitutional claim to the state court, he "must show cause for the procedural default and prejudice attributable thereto in order to obtain review of his defaulted constitutional claim" in the federal habeas court. *Murray v. Carrier*, 477 U.S. 478, 485 (1986). "The one exception to that rule . . . is the circumstance in which the habeas petitioner can demonstrate a sufficient probability that . . . failure to review his federal claim will result in a fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

Although the foregoing standard of review is exacting, the filings of a *pro se* petitioner are, of course, "held 'to less stringent standards than formal pleadings drafted by lawyers'" (*Castillo v. Walsh*, 443 F. Supp. 2d 557, 561 (S.D.N.Y. 2006) (quoting *Hughes v. Rowe*, 49 U.S. 5, 9 (1980))). I therefore read Ward's petition and briefing "liberally and interpret them to raise the strongest arguments that they suggest." *Id.* (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)).

## DISCUSSION

### A.     Right to Counsel

Ward's first argument is that his constitutional right to counsel was violated when "the state court ignored petitioner's claim of conflict between him and his counsel . . . by summarily ruling that he would continue to be represented by the same counsel." Pet'r Br. 5. Ward

appears to be arguing that both the trial court's failure to appoint a new lawyer for him and the trial court's failure to inquire further into Ward's reasons for wanting a new lawyer violated his constitutional rights. *See id.* at 5–6. The state appellate court rejected both of these arguments on the merits. *Ward*, 994 N.Y.S.2d at 677 ("[The defendant] was not deprived of the right to counsel by the trial court's denial of his motion for substitution of counsel."); *id.* ("The defendant's bare assertions . . . did not create a duty of inquiry on the part of the trial court."). I address each in turn.

### 1. Denial of Motion

The Sixth Amendment right to counsel includes "the right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). But this "right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Id.* at 151. In other words, "[t]he [Sixth] Amendment guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989).

Aside from this general principle, "the Supreme Court has not articulated a standard for deciding a Sixth Amendment claim based on a habeas petitioner's allegation [that] the trial court denied his request for substitute counsel." *Smith v. Bonner*, 104 F. Supp. 3d 1252, 1271 (D. Colo. 2015); *accord Soltero v. Kuhlman*, No. 99-CV-10765 (GEL), 2000 WL 1781657, at *2 (S.D.N.Y. Dec. 4, 2000) ("[N]o Supreme Court precedent expressly controls this precise issue . . . ."). As a result, the denial of Ward's request for new counsel cannot be said to have been "contrary to" Supreme Court precedent within the meaning of § 2254(d)(1). *See Smith*, 104 F. Supp. 3d at 1271; *Soltero*, 2000 WL 1781657, at *2.

"Absent direct Supreme Court precedent on point, cases from this Circuit applying the Court's relevant principles are relevant as to whether a state court's decision is objectively reasonable." *Soltero*, 2000 WL 1781657, at *3 n.2. *But cf. Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam) ("[C]ircuit precedent may [not] be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced." (citing *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012))). "[T]he Second Circuit has consistently held that belated substitution of counsel is warranted only by 'good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict.'" *Soltero*, 2000 WL 1781657, at *3 (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981)); *see also United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997) ("On the eve of trial, just as during trial, a defendant can only substitute new counsel when unusual circumstances are found to exist, such as a complete breakdown of communication or an irreconcilable conflict."). What is more, it is not enough to *allege* a conflict. "The defendant must demonstrate an objectively legitimate reason for his lack of confidence in appointed counsel." *Stephens v. Costello*, 55 F. Supp. 2d 163, 171 (W.D.N.Y. 1999).

In his colloquy with the trial judge, Ward, who could not afford to hire an attorney, said nothing more than that he "d[id]n't want" Maltz to serve as his trial counsel, suggesting only, and without explanation, that he lacked confidence in Maltz's ability. *Sandoval* Hr'g Tr. 4:19–5:16, 7:2–24. Ward did not indicate the existence of "a conflict of interest or a complete breakdown in communications" (*Linton v. Bradt*, 775 F. Supp. 2d 574, 582 (E.D.N.Y. 2011)). And his trial counsel minimized the dispute, referring to it as "a little problem" and stating that Ward "doesn't want to communicate with [him] *now*." *Sandoval* Hr'g Tr. 4:12–15 (emphasis added). On that record, especially "[g]iven the lack of Supreme Court guidance in this area"

(*Ramos v. Racette*, 726 F.3d 284, 288 (2d Cir. 2013)), I cannot say that the state court's decision was an "unreasonable application[ ] of clearly established Federal law" (§ 2254(d)(1)). Nor do I find that "the state court decision was . . . premised on 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Plumlee v. Masto*, 512 F.3d 1204, 1209 (9th Cir. 2008) (en banc) (quoting § 2254(d)(2)).

This case is unlike *Griffin v. Warden, Noble Correctional Institution*, No. 2:14-CV-00857, 2016 WL 1090960 (S.D. Ohio Mar. 21, 2016), in which the petitioner "assert[ed] that there had been a total lack of communication, [that] his attorney had never come to see him at the jail, and that the first day of trial was the first day he had ever seen her" (*id.* at *9). In that case, the state court failed to address any of those assertions in ruling that "the record did not suggest a [sufficiently serious] breakdown in the attorney-client relationship," and consequently the federal habeas court found the state court's "factual determinations . . . not reasonable." *Id.* In this case, although Ward *now* argues that "[t]here was complete breakdown of communication . . . between [his] counsel and petitioner" (Pet'r Br. 5), he did not make that representation before the trial judge. Hence, I do not find that the state court's decision was unreasonable.

### 2. *Failure to Inquire Further*

Alternatively, Ward argues that "the state court refused to conduct an inquiry," which could have revealed whether "a potential serious conflict existed." Pet'r Br. 5. "[W]here the trial judge receives a 'seemingly substantial' complaint from a defendant about his counsel, the Court has a duty to inquire into the reasons for the dissatisfaction." *Stephens*, 55 F. Supp. 2d at 169 (quoting *McKee*, 649 F.2d at 933).

But there are multiple problems with this claim. First, the trial court's failure to inquire cannot "be the basis for relief under [§ 2254] because such inquiry is not required by clearly

established Supreme Court precedent." *Peterson v. Smith*, 510 F. App'x 356, 366 (6th Cir. 2013). Second, although "[t]he Second Circuit has held that . . . the trial judge should make inquiry as to the reasons for a request to substitute counsel, that procedural irregularity is not a Sixth Amendment violation where the defendant cannot point to any harm that has resulted from a failure to make the required inquiry." *Stephens*, 55 F. Supp. 2d at 171; *see McKee*, 649 F.2d at 933 ("Where the failure to inquire causes the defendant no harm, that procedural irregularity cannot of itself be a basis for granting the writ."). Although Ward states that "[t]here was [a] complete breakdown of communication and lack of trust" (Pet'r Br. 5), he neither elaborates on this breakdown nor describes what effects it had on the trial. Most notably, Ward does not assert either that trial counsel provided ineffective assistance or that he was unable to assist in his own defense. Ward's argument therefore fails.

## B. Defaulted Objections

Ward also asserts that his constitutional rights were violated in that "the trial court gave an unbalanced reasonable doubt charge . . . which diluted the people's burden of proof" and in that "the trial court allowed the Prosecution to introduce[ ] purported bad acts without the court['s] permission and . . . never provided [a] limit[ing] instruction to the jury." Pet. 16. With respect to each of these claims, the state argues that I need not address the merits because they are procedurally barred. State Br. 24, 36.

As noted above, a federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009)). That said, "[a]n independent and adequate state ground for rejecting a federal claim does not bar federal court review of the claim if the petitioner demonstrates 'cause and actual prejudice' for failing to

comply with the state rule." *Id.* at 101 n.1. Alternatively, "[i]f a petitioner is not able to show cause for and prejudice from the procedural default, a federal habeas court may still review claims to prevent a fundamental miscarriage of justice." *Castillo*, 443 F. Supp. 2d at 563 (citing *Murray*, 477 U.S. at 496).

"Independent and adequate state law grounds preventing federal review include violations of state procedural rules . . . ." *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007). Here, the Appellate Division rejected Ward's arguments because he "failed to preserve [them] for appellate review," citing the rule codified at subsection 470.05(2) of the New York Criminal Procedure Law. *Ward*, 944 N.Y.S.2d at 677. "That rule requires a contemporaneous objection to any alleged legal error by defense counsel at a criminal trial." *Richardson*, 497 F.3d at 217 (citing N.Y. Crim. Proc. Law § 470.05(2)). Additionally, under the rule, "[a] general objection is not sufficient to preserve an issue since such would not alert the court to defendant's position. Instead . . . defendant must *specifically focus on the alleged error*." *Id.* at 218 (quoting *Garvey v. Duncan*, 485 F.3d 709, 714 (2d Cir. 2007)). The Second Circuit has confirmed that the contemporaneous-objection rule constitutes an independent and adequate state ground for purposes of habeas review. *See, e.g.*, *Downs*, 657 F.3d at 104.

A review of the record confirms that trial counsel did not object to the jury instruction and made only a general objection to the prior-bad-acts evidence. *See* Trial Tr. 669:1–3, ECF No. 9-7 (jury instruction); Trial Tr. 324:10–13, 328:10–13, 376:24–377:8, ECF No. 9-5 (prior-bad-acts evidence). As a result, in order to succeed on either of these claims, Ward must "demonstrate[ ] (1) cause for the default and resulting prejudice, or (2) that the failure to consider the claims will 'result in a fundamental miscarriage of justice.'" *Castillo*, 443 F. Supp. 2d at 563 (quoting *Coleman*, 501 U.S. at 750).

*1. The Reasonable-Doubt Charge*

Ward asserts that "[i]t would be a fundamental miscarriage of justice if the Court [does] not review [his] claim about the reasonable doubt charge[ ]" (Pet'r Br. 12), but this statement appears to be more rhetoric than argument. The prototypical "fundamental miscarriage of justice" occurs "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Castillo*, 443 F. Supp. 2d at 563 (quoting *Murray*, 477 U.S. at 496). Although Ward argues that the evidence adduced against him at trial was weak (*see* Pet'r Br. 10–12), he does not assert that he is actually innocent of the crimes charged. Nor does he provide any other basis for me to conclude that a fundamental miscarriage of justice has taken place in this case.

Accordingly, I may grant relief to petitioner only if he can establish cause and prejudice for his procedural default. "Ineffective assistance of counsel can constitute cause sufficient to overcome a procedural default if the counsel's performance amounted to a constitutional violation, but 'attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default.'" *Castillo*, 443 F. Supp. 2d at 564 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)). The state concedes that petitioner argued ineffective assistance of counsel on his direct appeal, and thus that such a claim is not procedurally barred, but insists that his trial counsel was not constitutionally ineffective. *See* State Br. 25, 32. I need not resolve this issue, however, because it is clear that, even if Ward can show cause and prejudice, his reasonable-doubt argument fails on the merits.

"[T]he Constitution neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). "[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id.* (citation omitted). Indeed,

"[i]n only one case ha[s] [the Supreme Court] held that a definition of reasonable doubt violated the Due Process Clause." *Id.* (citing *Cage v. Louisiana*, 498 U.S. 39 (1990)).

"In reviewing jury instructions on habeas relief, the Supreme Court instructs that the federal court must inquire as to 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.'" *Santorelli v. Cowhey*, 124 F. Supp. 2d 853, 857 (S.D.N.Y. 2000) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). "[N]ot every unhelpful, unwise, or even erroneous formulation of the concept of reasonable doubt in a jury charge renders the instruction constitutionally deficient." *Id.* at 858 (quoting *Vargas v. Keane*, 86 F.3d 1273, 1277 (2d Cir. 1996)). Rather, the question is simply "'whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet' the standard of proof beyond a reasonable doubt." *Id.* (quoting *Vargas*, 86 F.3d at 1277).

The challenged jury charge in this case does not resemble the language that the Supreme Court rejected in *Cage* (*see* 498 U.S. at 41). Consequently, it cannot be said that the state court's decision in this case was either contrary to or an unreasonable application of *Cage*. *See, e.g.*, *Santorelli*, 124 F. Supp. 2d at 858. Rather, the instruction given by the trial judge in this case substantially mirrors the instruction upheld in *Allen v. Amoia*, No. 12-CV-05546 (CBA), 2013 WL 9829391, at *19–20 (E.D.N.Y. Sept. 10, 2013), *adopted in pertinent part by* 2014 WL 5427535 (E.D.N.Y. Oct. 23, 2014).

In *Allen*, as here, the "petitioner argue[d] . . . that it was error for the court not to include an instruction that it was 'not sufficient to prove that the defendant is probably guilty.'" *Id.* at *20; *see* Pet'r Br. 10 (same). The *Allen* court rejected this claim, noting that "the Supreme Court has clearly held that no specific language charging reasonable doubt is required" and

that "the [trial] court's charge overall made clear the correct rule to be applied in evaluating the evidence." *Allen*, 2013 WL 9829391, at *20 (citing *Victor*, 511 U.S. at 22–23).

I agree with the *Allen* court's conclusion. The trial judge here defined a reasonable doubt as "an actual doubt" that "a reasonable person" would have "after having considered all the evidence in the case," and instructed the jury that "[w]henever any such reasonable doubt exists as to any material element necessary for a conviction [they] must by law find [the] defendant not guilty." Trial Tr. 644:24–645:9, ECF No. 9-6. That instruction in no way suggests that a belief that Ward was merely "probably guilty" would be enough for conviction. I find that "the reasonable doubt instruction . . . was not reasonably likely to instruct the jury to apply that standard in a way that violated the Constitution" (*Santorelli*, 124 F. Supp. 2d at 859) and therefore reject Ward's claim.

Ward's objection, like the petitioner's in *Allen*, stems from the inclusion of "petitioner's proposed instruction . . . in . . . the New York State Criminal Jury Instructions." *Allen*, 2013 WL 9829391, at *20; *see* Pet'r Br. 8–9. But "there is nothing in state or federal law that requires that this particular language be charged." *Allen*, 2013 WL 9829391, at *20. And even if the proposed language were required by New York law, "federal habeas corpus relief does not lie for errors of state law." *McGuire*, 502 U.S. at 67 (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Accordingly, "the fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief." *Id.* at 71–72. Ward's claim fails.

### 2. *Admission of Prior Bad Acts*

As with the jury-instruction claim, I need not resolve whether ineffective assistance of counsel excuses petitioner's procedural default because it is clear that his constitutional claim regarding the admission of his prior bad acts fails on the merits.

"The Supreme Court has never held that the admission of prior bad acts, even when offered to prove a defendant's propensity to commit crimes, violates the Due Process Clause." *Rios v. Artuz*, No. 07-CV-00330 (NGG), 2007 WL 1958899, at *7 (E.D.N.Y. June 29, 2007). I therefore apply the standard "in habeas cases for evidentiary error of constitutional magnitude," which has been described as "stringent" (*Linton*, 775 F. Supp. 2d at 577). Under that standard, "[a] State court's evidentiary rulings, even if erroneous under State law, generally do not present constitutional issues cognizable in a habeas corpus petition." *Id.* It is not enough to show that evidence was admitted in violation of state law—or even that its admission would have violated federal law. Rather, a habeas petitioner "must show that the error was so pervasive as to have denied him a fundamentally fair trial." *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985) (citing *United States v. Agurs*, 427 U.S. 97, 108 (1976)). That is, the question is "whether the erroneously admitted evidence, viewed objectively in light of the entire record before the jury, was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. . . . [I]t must have been 'crucial, critical, highly significant.'" *Id.* at 19 (quoting *Nettles v. Wainwright*, 677 F.2d 410, 415 (5th Cir. Unit B 1982)).

In this case, it is unclear whether Ward can surmount even the first hurdle—establishing that the evidence was erroneously admitted in the first place. "Paralleling federal law, New York law allows for admission of evidence regarding prior bad acts and[ ] uncharged crimes where it is relevant to an issue other than a defendant's propensity to commit the act or crime. Such evidence may, for example, be admitted . . . to complete a narrative." *Feliciano v. Berbary*, No. 03-CV-04832 (NRB), 2003 WL 22832638, at *3 (S.D.N.Y. Nov. 25, 2003) (citation omitted); *see also United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997) ("It is well established that 'evidence of uncharged criminal activity is not considered "other crimes"

evidence under Fed. R. Evid. 404(b) . . . "if it is necessary to complete the story of the crime [on] trial."" (alteration in original) (quoting *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989))).

Here, the objected-to testimony was that Ward hit and threatened to shoot R.P. and that he told P.S. that he had once tried to kill someone.[4] I am not convinced that the introduction of this testimony was error. The testimony was "offered to complete and contextualize a narrative account of the charged incident" (*Feliciano*, 2003 WL 22832638, at *3); that is, P.S. testified that "the things that [Ward] said and the way that [she] had seen him treat [R.P.]" were what led her to have sex with him (Trial Tr. 376:24–377:4, ECF No. 9-5). Her testimony thus served to "place[ ] the events as described by the victim in a believable context, with particular reference to her conduct at the time of the charged crime." *Feliciano*, 2003 WL 22832638, at *3 (quoting *People v. Feliciano*, 753 N.Y.S.2d 511, 512 (App. Div. 2003)).

What is more, the jury was unlikely to use this evidence to draw an impermissible propensity inference, given the total dissimilarity between the sexual misconduct with which Ward was charged and the prior bad acts at issue. At bottom, even if this evidence should not have been admitted—or a limiting instruction should have been given—I cannot say that the admission of the testimony denied Ward a fundamentally fair trial. The claim fails.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is denied. Because petitioner has not "made a substantial showing of the denial of a constitutional right" (28 U.S.C. § 2253(c)(2)), no certificate of appealability will issue, although petitioner may seek such

---

[4] At least, I presume that that is the objected-to evidence. Although Ward raised the introduction of "purported bad acts" in his petition (Pet. 16), he has nowhere identified before this court the bad acts at issue, and his *pro se* briefing is silent on the matter. I assume that he is objecting to the same evidence that he objected to when represented by counsel before the state appellate court. *See* Appellant Br. 35, 37–38.

a certificate from the Second Circuit. The Clerk of Court is directed to enter judgment accordingly and close the case.

So ordered.

_____/s/_____
Allyne R. Ross
United States District Judge

Dated:      May 30, 2019
             Brooklyn, New York